Here is Brian Turner versus Mike Williams. Good morning. Is counsel for Mr. Turner ready to proceed? May it please the Court, my name is Marie Maddox, counsel for the appellant Brian Turner. And there are several issues that I intend to address before the Court and claim error on the trial court below. I need to say first that there is an error in our brief and I needed to correct that before I get to the first argument. On the probable cause issue, we have said that in the probable cause affidavit, it did not address the issue of props and it did in fact address the issue of props. And I'll talk about that in a minute, the beer can. So the first argument is that we have, the question is whether we have properly pled the absence of probable cause and whether there were omissions, material omissions that were made in the probable cause affidavit that was prepared by the Sheriff's Office and signed off on by the judge. We have claimed that the court, the magistrate had rubber stamped the probable cause affidavit that was prepared by the Sheriff's Office. So the material omissions that we have pled, and this is a pleading case, not on summary judgment. And a lot of the cases that have been cited have been summary judgment cases rather than what we have adequately pled. And on the absence of probable cause on the false arrest claim, we have pled that a material omission was that Mr. Turner, immediately after the incident occurred on, after the shooting on February 6, 2017, immediately thereafter when his supervisor showed up and he was asked about the props, the beer, which were allowed under the JCSO policies, the Jacksonville Sheriff's Office policies. So when he was asked that question, he said, yes, we have beer and it's in the car. Now, you've got to remember that this is immediately after an officer-involved shooting where someone has been killed. And he said, and at that point, and the question is whether we have pled, he didn't know at that time that they had actually taken the beer and hidden it. So the question is then whether that was a material omission when the probable cause affidavit was submitted to the judge that Mr. Turner had said that we had beer. The second material omission is that the beer was not evidence. And he was charged with the two charges that he had, the two criminal charges, were tampering with or fabricating physical evidence. And the second one was criminal conspiracy. And on the tampering with physical evidence, the props were not, in fact, the props being beer was not evidence and could never have been. Counsel, that's what a crime scene, and you don't know what relevance those items might have had in the overall investigation. I speak for myself. I think everything were part of the investigation. Yes, sir. And I Whether they were allowed to have beer is irrelevant, in my view, in terms of investigating the crime scene. And, Your Honor, if you look at the criminal statutes that he was charged with and tampering I'm familiar with those. Yes, sir. And the charge, he was charged with fabricating physical evidence. Yeah. And the He was charged with altering, wasn't he charged with altering? I mean, because what Judge Schofield is saying, and again, I speak for myself as well, but a crime scene is supposed to be left as is from the moment that the scene occurs. And your client was charged with altering. He was, yes. Correct? He was charged Because the removing the beer props, as you call them, is altering the scene. It is. And that It would be no different than if you removed the bullet casings from the scene. I would just, I would just point to what it says tampering with or fabricating physical evidence was what the probable cause affidavit says. And when, when you look at what the beer props are, is that evidence of anything? And was he able at that time, because this is immediately following an officer-involved shooting. The question is whether he was even able to form an intent to commit any kind of an offense at all. He doesn't remember. He has no recollection at all as to these events that occurred immediately after the shooting. He was psychologically, and we have pled. I get all that. On the intent issue, it just seems very odd to me. And I mean, I've signed some warrants before, but I'm not, I didn't do a lot of warrants, but it would be very odd to me to see a warrant application that said anything about the intent of the person. Because the question is probable cause, right? The, the, the officer who's applying for the warrant doesn't know whether someone intended to do something or not. It doesn't matter what that person says they intended to do. They're the target of the investigation. Who cares what they say? Why would, why would that be something that officers had to put in a warrant application? Well, you have two people. You have both, I believe he's an assistant chief, and also, and or a sergeant. And we have pled this, that both the ASA, the assistant state attorney, and this gentleman, a high up official within the sheriff's office, both said that there was not probable cause. So the question is whether, because they're both intent crimes, the conspiracy and the tampering with the evidence are both intent. They said that before the warrant application was signed? I cannot make a representation, Your Honor, as to when that statement was made. I believe that the ASA said it before the warrant was actually signed, that there was insufficient, that they acted prematurely in getting the warrant signed. But they're both intent crimes. So the question was whether he could even have formed the intent. But even if there was probable cause, and we have argued in this case that Lozman and both Neeves, Neeves on the individual capacity claim against Mr. Williams and the Lozman case on the official capacity, the question is whether, even if there is probable cause, whether we have sufficiently pled the elements required to show that Lozman and Neeves both apply. And what the court, and our argument is, is that the district judge read Lozman and Neeves too narrowly. And the issue is, have we pled? Not can we prove, but can we plead? And in the Lozman case, what the court found, or what the court held, was that even if there was probable cause to arrest, the plaintiff need not prove the absence of probable cause to maintain a claim of retaliatory arrest against the defendant. But we have to engage in a mouth-healthy analysis, and that is, would the same decision have been made absent the retaliatory intent? So, what have we pled? If the court looks in the second amended complaint at paragraphs 47, 51, and 58, and in all of those, the paragraphs, what we have actually pled is that prior to... Can you tell me the paragraphs again, counsel? I'm sorry. Yes, ma'am. In paragraphs 47, 51, and 58 of the second amended complaint. Thank you. And what we have pled in those paragraphs is that there was a premeditated motive, and this is before he was even called in, and this is on, he was called in ten days later on February 16th to do a fact-finding hearing. And before then, or when he arrived, his attorney, his FOP attorney, Mr. Volgensang, said that the decision had already been made about arresting them. And he says this, and this is in paragraph 47, that the administrators, the Jacksonville Sheriff's Administration, including Williams, were already talking about arresting all three members of the undercover team on charges of tampering with evidence. And then you go down in paragraph 51, and the meeting, the interview lasted about ten minutes. Volgensang walked outside of the interview room and was informed that the warrants during the interview of Mr. Williams, or of Mr. Turner, during the interview of Mr. Turner, they had obtained the warrants to actually serve the warrant while he was there giving his statement. There was a roundtable meeting that we applied in paragraph 58, and that roundtable meeting was with the sheriff and with other high-level officials within the sheriff's office to make a decision as to the arrest of Mr. Turner. And why is that important? Because under the Losman case, we have to show that there was some kind of an official policy, and that official policy would have existed before the arrest. And what the court held, what the district court held, is rather than looking at the arrest and when he was arrested and whether that official policy, the meeting with Williams and others, occurred before the arrest, the court read Losman too narrowly and said that it had, that the meeting had to be before the arrestable offense rather than the arrest. And I believe that that misses the point in Losman, where Losman's talking about the official policy, and do you have this official policy that exists before the event? And where the district court erred was in finding that event, that the arrestable offense occurred before. And that is error in reading Losman too narrowly. Can I ask you a question about the timing of this? The shooting occurred in 2016, right? In 2017. In 2017? Yes. Okay. Losman is a 2018 case from the Supreme Court and Neves is a 2019 case from the Supreme Court. How are those clearly established law in 2017 for purposes of qualified immunity? And that would be a problem with us on the qualified immunity. I would agree on the individual capacity claims against Williams, but not the official capacity claims against the Sheriff's Office, which is count one. And so it would be a problem for us there. But the fact that the court said arrestable act, and clearly I believe that the court was trying to find ways to say, you know, we have not met the Losman factors. For example, even looking at a Mount Healthy analysis, which the court said that we had insufficiently pled that they would not have made the same decision anyway. Well, if you look at our comparators, and we have put the comparators in paragraphs 91 and paragraphs 100 through 104. And if you look at the comparators, you have folks that are hiding evidence. They are deleting information off of cell phones. They are destroying evidence. And nothing happened to them. So the question is whether we have sufficiently pled. And the court said that the district court judge said that we had conclusively made those allegations. Well, aren't we entitled to do that and to bring forth the facts that at this point in time we know in a- Let me ask you a question regarding the district court. And you could do this on rebuttal if you want to. But I guess I have a question regarding the district court reviewing the audio of the iPhone. Because your second amendment complaint in paragraphs 24 and 25 talk about the rookie not knowing that the use of beer props was allowed. And then paragraph 25 of the district court judge answered in a distant and disinterested manner, yeah, and the rookie proceeded to dispose of the two unopened cans of beer and an opened bottle of beer. And the district court judge reviewed the iPhone audio in its entirety because it is referenced in the second amendment complaint. And it contradicted the allegations in the second amendment complaint and showed that your client was not disinterested. And Judge, I still maintain the argument that it was outside the scope of the four corners of the complaint and it should not have been reviewed. But that goes to the probable cause issue and whether there was probable cause. It has nothing to do with the Lozman and the Neves arguments. Counsel, one of your problems- I understand, but it's- Go ahead. No, go ahead, Judge. One of the problems I sense is that you have contradicted with conclusory allegations in the complaint, the exhibits attached to the complaint. No, sir, not on- What I'm saying is I view your complaint, your conspiracy arguments and all that as essentially contradicted by the attachments. And Judge- I can't reconcile them. Well, you're talking about, I think, one issue as to what he said. I'm talking about probable cause for the arrest. Yes, sir. You have an assistant state attorney passed on the evidence that was presented by the officers. Yes, sir. Okayed the application of an arrest warrant. And the arrest warrant was applied for and signed by Judge Arias. In one place in your complaint, you say Judge Arias just rubber stamped that the judge was an idiot. But the document doesn't show anything like that. Judge, I have not claimed that the judge was an idiot or anything like that. Well, you say he said a rubber stamp. Yes, sir. And there's no information. But you've got a case in which the prosecutor's office, the assistant state attorney has reviewed this case and now an application for the warrant for his arrest is made and is issued and the judge issues the warrant. Yes, sir. And that's correct. And, Mr., as we've said in the complaint, that he does not remember. The only thing he remembers saying is, yeah. And that... What relevance is that? That's no relevance as far as I'm concerned. When your honor has said that there's a contradiction, what we have pled is that what his recollection was that he said, yeah. He doesn't remember anything. Counsel, but, I mean, I understand that's your argument. But, you know, there's evidence that is completely contrary to the statement that you are making to this court today. And... Honestly, and it's really honest. Honestly, it is not... You're an officer of the court and really respectfully, it's not appropriate for you to continue with that line of argument. And, Judge, what I'm saying is that we accept all of that and the argument that the court had exceeded the scope of what is allowed on a motion to dismiss is what our argument was. We have attached those documents... Do you have a case? Do you have a case? Because I know that one does not exist. Do you have a case that says that a district court judge cannot review evidence that is identified in your own complaint that contradicts the allegations of the complaint? No, ma'am, I do not. And what I... You do not because it does not exist because, in fact, it's contrary to that. Yes, ma'am. The reason that we attached the... made the attachments is to show the court the entirety of everything. We are the ones who brought the... So it doesn't matter why you did it. You did it and it's part of the complaint. And the law is clear that a district judge can take attachments to the complaint, which are pled by the plaintiff in deciding a 12B6 motion. And, Your Honor, and that's why we... So you ought to just cave in on that argument. Yes, sir. And we... I have agreed. And that goes to, again, to the probable cause issue and whether there was probable cause to arrest. Ms. Maddox, you've gone over. So you'll have three minutes remaining for rebuttal. Thank you. May it please the court. My name is Mary Margaret Giannini. I'm appearing on behalf of Sheriff Williams in both his official and individual capacities. Picking up on the prior arguments that you all or discussions you all have had with opposing counsel, I wanted to address that the city, the sheriff's position is that, indeed, Mr. Turner's second amended complaint is not sufficient. And the district court was absolutely correct to dismiss with prejudice that complaint. And we ask you all to affirm that decision. In speaking to the question of probable cause, as has already been discussed, probable cause requires that under the totality of the circumstances, based on the information and circumstances presented to a person through reliable information, that a reasonable person would have reason to believe that a crime had been committed. Here, the investigating officers are presented with information the day after the shooting by a confession, for lack of a better word, by two of the officers on the scene that, indeed, they had removed the beer props and made those beer props unavailable to investigators. The investigating officers were presented with an audio recording that captured the words of Mr. Turner in exchanges with his junior officers to remove that information or remove those beer props from the scene. And so based on a totality of the circumstances, a reasonably objective person would reach a conclusion that, indeed, there was probable cause to arrest Mr. Turner and his colleagues for tampering with evidence and conspiracy to arrest him. Opposing counsel has noted in the Lozman and the Neves line of cases, the Supreme Court has noted a very narrow set of exceptions where perhaps a retaliatory arrest claim can be brought, even though probable cause exists. But in this context, the district court did not err in its evaluation and application of Lozman to the facts at hand. Opposing counsel talks a little bit about the timing of events, and in particular, the roundtable meeting that occurred, allegedly senior levels of the Jacksonville Sheriff's Office. What's interesting is that in that portion of her complaint, when Mr. Turner is describing that roundtable meeting, he suggested it happened long after the events at issue here. Mr. Turner engaged in this fatal shooting on February 6th. On February 7th, investigating officers have the relevant information before them to reach a conclusion that there is probable cause that a crime has been committed. Based on the allegations in Mr. Turner's second amended complaint, he isn't interviewed for 10 days because pursuant to Jacksonville Sheriff's Office policies, he's meant to be on administrative leave. He has been involved in a traumatic event of an officer-involved shooting, and there's meant to be a time period to wait before he's interviewed. But when he comes in to interview, and based also on the information provided to investigating officers by his junior officers, there is probable cause. So if this roundtable meeting happened, and we must take the complaint as it's pled, it's not plausible to agree that it happened long before because the probable cause existed for this crime of tampering with evidence within a day of the events at hand. Second, even if Mr. Turner could satisfy the Lozeman considerations, he could show that there was a premeditated city policy that was an actual policy to retaliate against Mr. Turner for the exercise of his First Amendment rights, Mr. Turner's second amended complaint still does not sufficiently allege that other similarly situated individuals who engaged in similar arrestable conduct, but who had not expressed a First Amendment right to run for sheriff in another county, were treated differently than he. Opposing counsel provides a variety of comparators, but overlooks the two most cogent comparators, that being Mr. Turner's own two junior officers who were with him on those days. Officer Kaveis and Officer Griffs, just like Mr. Turner, were at a crime scene and together conversed and discussed and removed evidence or removed material from that crime scene and made it inaccessible to investigators. Now those two junior officers did not express an intent to run for sheriff in another county. However, just like Mr. Turner, those two junior officers were arrested. Is that in the complaint too? That's in the complaint, that information about the comparators, I guess, being arrested as well? In paragraph 51 of the complaint, I believe, Your Honor, it identifies that arrest warrants were issued for both individuals and then an attachment to plaintiff's second amended complaint is the full disposition statement, which identifies that all three men were defendants and arrest warrants were issued for all three men. Thank you. The other comparators raised by Mr. Turner in his complaint are not sufficiently similar to Mr. Turner in his situation. All of those individuals, the allegations in the complaint do not let the court know if they were at a crime scene, if they spoiled a crime scene. Certainly it looks like those individuals did things with evidence that may very well have been in violation of Jacksonville Sheriff's Office policy, but nothing in those allegations indicate that those individuals were at a crime scene and committed the acts necessary for there to be probable cause that they engaged in the act of tampering with evidence. We'll note that if this court were not to accept opposing counsel's secession on the argument of qualified immunity, as you, Judge Brasher, noted, the constitutional right at issue for Mr. Turner's individual liability claim against Sheriff Williams is whether or not an individual can be arrested in retaliation of exercising their First Amendment rights, even if probable cause exists for that arrest. That right is not clearly established until June in 2019 by the Supreme Court. Mr. Turner was arrested in February of 2017, so we have a two-year gap where the right at issue is not clearly established, and so in no measure should Sheriff Williams be held individually liable or be named party to this complaint. What do you see as the split between the official capacity claims and the individual capacity claims? What relief is the plaintiff seeking against the sheriff in his official capacity? My understanding would be, one, perhaps the inherent harm that arises from, if so proven, the retaliatory action for someone exercising a perhaps also more particularly, although it is difficult to discern this from the complaint, which would get to this question of whether or not this complaint is a shotgun pleading, which we believe it is, as to whether somehow Mr. Turner's employment, his ability to run for sheriff in another jurisdiction, his retirement benefits are somehow implicated by the arrest, the charges of which were later dropped, and Mr. Turner on his own initiative resigned from the Jacksonville Sheriff's Office and retired. So he's not alleging an employment retaliation claim, and so in reading the complaint and discerning what is the relief that's being sought, it is difficult to some measure for the sheriff to discern what are the relevant facts being alleged and how do they align with the claims against him. And so for that reason, too, we would affirm or we would present that what is going on here is a shotgun pleading which would further warrant this court dismissing or affirming the district court's dismissal of Mr. Turner's Second Amendment complaint with prejudice. Of course, at the outset, our position is that the district court was absolutely correct to say that the pleadings were not sufficient to show that Mr. Turner's arrest was not based on probable cause. Probable cause existed here, which then is a bar to all of Mr. Turner's claims against Sheriff Williams in both his official and individual capacities. But even if this court wanted to go into a Lausman Neves analysis, Mr. Turner is not able to make it through that analysis. He has not sufficiently pled that there's an existence of an official premeditated city policy to retaliate against him, much less that Sheriff Williams individually knew at the time of Mr. Turner's arrest that Mr. Turner had a constitutional right not to be arrested for exercising First Amendment rights where probable cause might otherwise exist to support his complaint. And as a coda, this is the third complaint that Mr. Turner has rendered in this case. He filed a complaint. He filed a First Amendment complaint before the federal court, which the federal district court dismissed, but provided Mr. Turner an opportunity to replead. In doing so, the district court detailed any number of insufficiencies in the complaint, whether it be under the 12b6 standard, whether or not Mr. Turner had sufficiently alleged claims, but also provided Mr. Turner with direction as to what was faulty with his complaint from a shotgun perspective. Who is representing him in connection with the U.S. State Attorney's Office? Charges were never, he was not prosecuted at the state level. The disposition indicates that there were conferences between his lawyer and the State Attorney's Office, which led to the disposition. I do not know the absolute answer to that, Your Honor. My strong supposition is it would be Mr. Philip Volgazang who served. Well, he's not named in the complaint, but there was evident there was, if we take the disposition as true, he was represented at the time and resigned in connection with the disposition as part of it. That is what the disposition statement says, Your Honor. Yes, the disposition statement does say that that is a choice that Mr. Turner agreed to do. The implication is that absent that, the prosecution would have gone forward. That's just an implication, that's all. That would be the implication. I don't know. Otherwise, the State Attorney would have extracted the resignation without any reason. Do you follow me? As an extortion. There was nothing like that. There was nothing like that, and Your Honor, the sign of question highlights that to the extent that Mr. Turner is naming Sheriff Williams in his official and individual capacities as a defendant in this case, that whatever agreement happened between the State Attorney and Mr. Turner's, Mr. Turner's individual attorney at that point is separate from anything that Sheriff Williams had to do in this manner. If the court doesn't have any other questions. Could you address this issue of the meeting? The district court says in its order that the alleged meeting took place after, I mean it's on page, let's see here, on page 17 of the district court's order, it says in addition to the fact that the alleged meeting, you know this round table meeting we were talking about, took place after not before his arrestable act, Turner does not allege enough information to plausibly plead that a retaliatory plan was made at the meeting. The way I understood Lozeman, or maybe that's Neves, no Lozeman, the plan was supposed to be before the arrest, not before the that is a problem that the meeting took place after the arrestable act. Is that a misreading of Lozeman? I don't think it's a misreading of Lozeman because if you go and look at Lozeman, the premeditated meeting happened long, genuinely long before Mr. Lozeman engaged in the acts that that resulted in his arrest. And if we want to do a factual comparison between Lozeman and what happened with Mr. Turner, Mr. Lozeman was a very active civic citizen, showing up at city council meetings, perhaps being a thorn in the side to city council members, but you know in there and engaging, suing the city council any number of times, and at some point the city council inadvisably has a meeting where on their meeting records they say we got to do something to intimidate this guy. And then sure enough, a couple months later in a meeting Mr. Lozeman shows up, is a bit obstreperous, and they have him arrested for disrupting the meeting. I guess why wouldn't it be just as much of a problem that the city council had that meeting in Lozeman and said we've got to do something to intimidate this guy, and then another city councilman says well you know last week he was disruptive in a meeting, and they said great let's go arrest him for that. Why isn't that the same problem as what happened in Lozeman? It seemed like the timing is important that the meeting is before the arrest, not necessarily that it's before the arrestable act. I think the other important thing about the meeting and what happened at the meeting is that aside from allegations that there is this meeting and an allegation that there was collusion at this meeting, the court could also plausibly infer, as does the district court, that whenever there's a situation that a Jacksonville Sheriff's Office is engaged in activity that could constitute a crime, that higher-ups within Jacksonville Sheriff's Office need to meet and talk about it and say how do we address this infraction. And so the complaint as to sufficiency does not provide the court with plausible allegations to allow for the reasonable inference that in fact there has been some sort of premeditated plan that is supported by objective evidence. I recognize that I have run out of time and wanted to be sure that there weren't any other questions. So for all those reasons we'd ask that you affirm the district court's order dismissing Mr. Turner's complaint with prejudice. Thank you. Ms. Maddox, you have three minutes remaining for rebuttal. Thank you, Your Honor. And Your Honor, I did not intend in the amended complaint, we have not intended to mislead. That's the reason and I apologize to the court. We were putting in what he recalled saying and then we provided a copy. No, I understand, Ms. Maddox. It's fine. Thank you. Okay. Your Honor, let me first address the issue that Your Honor had raised about what the district court judge found about the arrestable act. It doesn't matter under Lausman whether it was way before because I think that's again reading Lausman too narrowly. And it's correct that the meeting in Lausman had occurred several months before. But it doesn't matter under Lausman. What matters is that we are able to plead and ultimately then prove that there was an official policy, an official act by the governmental entity to show a retaliatory intent and have we pled that. And that's what if you look at paragraphs again 47, 51, and 58 to show that there was in fact a retaliatory intent and that they had been meeting about this and that this was the sheriff. The sheriff was involved in this. So under as a Monell claim and we're able to plead and say that Williams himself was involved. We have pled that. I think it's paragraph 122 that he was the official policymaker for the office of the sheriff. So have we sufficiently... Let me ask you a question, Ms. Maddox, because in the second amended complaint in paragraph 45, you discuss the affidavit for arrest warrant and it's exhibit A to the second amended complaint. And when you read the arrest warrant, it specifically talks about how the day after the shooting, because remember the arrest warrant as your complaint alleges and obviously the affidavit for arrest warrant confirms, this was issued on February 16th, 2017. So 10 days after your client returns from administrative leave. And the affidavit specifically says that the day after the shooting, the rookie Keves was re-interviewed by the Jacksonville Sheriff's Office and he admitted removing the beer cans and he admitted discarding them. And so there's a whole discussion about that. So why couldn't the district court make the determination that there was a reason for the sheriff's department to be having these meetings because they knew the day after the shooting that there was a problem and that evidence had been tampered with. Well, that's one reading of it. And we have also pled that there were, and this is again in paragraphs, and this is in paragraphs 94, 95, where we have pled that there, and we've said that Bullard heard Henderson talking about his intention to run for the position and that Mike Turner was going to, Mike Williams was going to do whatever he could do in order to get Brian Turner. And I understand that those are your allegations. And frankly, if someone else had planted evidence, perhaps that would make sense. But is your client on the audio saying, get rid of the, uses of profanity. I see that my time has expired. May I still respond? Of course you may. Thank you. Um, you're right. There are comments and statements that are made by Mr. Turner that are not favorable to him. Absolutely. But the question is whether we have pled that he would have been arrested anyway. So if you look at that and that's where these comparators are so important and we have pled in paragraphs 91 and 100 through 104, the comparators, the defendant makes, or the appellee makes a big point out of the two individuals who were arrested with him, Keeves and the other, Mr. Griffin. The problem is, is that they were both given community control. Mr. Turner, on the other hand, was told and said that he was going to be from law enforcement and could no longer perform any law enforcement duties and would be permanently assigned to a desk position. That is not what happened to the other two individuals. So the other two individuals, were they not, they were not senior officers, were they not, was he not the ranking officer at the scene? He was, but doesn't that go to a summary judgment question in terms of applying the policies equally? And so I've got, we've got at least five other people that we appointed to that have destroyed evidence that have done things and they gloss over that and so did the district court when we have actually pled in paragraphs 101, 102, 103, 104 tampering with evidence and destroying witness statements, destroying evidence. And wouldn't that have to be factored into this analysis rather than just ignoring it in a malhealthy analysis? I would respectfully request that the court reverse the district court's grant of the motion to dismiss. I have not had a chance to address the shotgun pleading argument and would rely upon our brief on that issue. We went through and very detailed went through every fact. Thank you, Your Honor.